1

Alan I. Schimmel, Esq.  SBN 101328
Michael W. Parks, Esq. SBN 154531
Arya Rhodes, Esq. SBN 299390
SCHIMMEL & PARKS, APLC
15303 Ventura Blvd., Suite 650
Sherman Oaks, CA 91403
Telephone: 818.464.5061/Facsimile:
818.464.5091

2

3

4

5

*Attorneys* for Plaintiff

6

7

# UNITED STATES DISTRICT COURT

8

## CENTRAL DISTRICT OF CALIFORNIA

9

10

LOURDES LEFEVRE, an individual,
on behalf of herself and all similarly
situated and aggrieved employees,

11

12

Plaintiff,

13

v.

14

FIVE STAR QUALITY CARE, INC., a
Maryland Corporation; Does 1 through
25, inclusive,

15

16

Defendants.

17

18

19

20

21

22

23

24

25

26

27

28

Case No.: 5:15-cv-01305-VAP-SPx

Honorable Virginia A. Phillips

**NOTICE OF MOTION AND
MOTION FOR APPROVAL OF
PAGA SETTLEMENT**

[Declaration of Michael W. Parks;
Declaration of David DeRubertis;
and [Proposed] Order filed
concurrently herewith]

Courtroom:    8A
Date:              12/28/2020
Time:             2:00 p.m.

Complaint Filed:  May 20, 2015

---

**MOTION FOR APPROVAL OF PAGA SETTLEMENT**

**TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD**:

PLEASE TAKE NOTICE that on December 28, 2020 at 2:00 p.m., or as soon thereafter as the matter may be heard in Courtroom 8A of the above-entitled Court, located at 350 West 1st Street, 8th Floor, Los Angeles, CA 90012, Plaintiff Lourdes LeFevre ("Plaintiff"), individually and on behalf of all other aggrieved employees, will and hereby does move this Court for entry of an Order as follows:

1. Approving the settlement and release of claims Plaintiff brings on behalf of herself and allegedly aggrieved employees under the Private Attorneys General Act of 2004 ("PAGA");

2. Approving the gross settlement amount of $3,062,000.00 in exchange for dismissal of the PAGA claims with prejudice;

3. Approving an award of $1,020,666.67 (33 1/3rd percent of the gross settlement amount) in attorneys' fees to Plaintiff's Counsel;

4. Approving an award of $11,314.71 to Plaintiff's Counsel for reimbursement of actual litigation costs;

5. Appointing ILYM as the settlement administrator, and approving an award of up to $22,550.00 in anticipated costs to ILYM for its settlement administration services; and

6. Approving $2,007,468.62 as payment of civil penalties under PAGA, to be allocated as follows: $1,505,601.46 (75% of the PAGA penalties payment) to the California Labor and Workforce Development Agency ("LWDA") for its share of PAGA civil penalties, and $501,867.16 (25% of the PAGA penalties payment) to the aggrieved employees.

Per the agreement of the Parties, this Motion is unopposed and has been approved by Defendant. This Motion is based on this Notice, the attached Memorandum of Points and Authorities, the declarations of Michael W. Parks and David deRubertis, the pleadings and other papers filed in this action, and on such

further oral or documentary evidence or argument presented at the time of hearing.

DATED: November 30, 2020

SCHIMMEL & PARKS
A Professional Law Corporation

*/s/Michael W. Parks*
Alan I. Schimmel, Esq.
Michael W. Parks, Esq.
Arya Rhodes, Esq.
*Attorneys* for Plaintiff

2
**MOTION FOR APPROVAL OF PAGA SETTLEMENT**

# TABLE OF CONTENTS

I.    INTRODUCTION ..............................................................................................1

II.   FACTUAL SUMMARY ....................................................................................1

III.  PROCEDURAL POSTURE ...............................................................................2

IV.   LEGAL STANDARD .......................................................................................3

V.    LEGAL ARGUMENT........................................................................................5

    a.   Standard for Approval of PAGA Settlement ...............................................5

    b.   The Proposed Settlement is Fair, Adequate and Reasonable.......................7

       i.   *The Settlement is the Result of Arms-Length Negotiations* .....................8

       ii.  *Plaintiff and Her Counsel Support the Settlement After Significant Investigation of the Factual and Legal Issues* .............................................9

       iii. *The Terms of the Settlement Are Fair and Reasonable* ........................11

    c.   The Requested Attorneys' Fees and Costs are Reasonable ......................14

       i.   The Results Achieved...............................................................................15

       iii. The Skill Required and the Quality of Work...........................................19

       iv.  The Contingent Nature of the Fee ...........................................................21

       v.   The Burdens Carried by Counsel ............................................................22

       vi.  The Awards Made in Similar Cases........................................................22

       i.   Cross-Check with Lodestar Calculations ...............................................23

    d.   Plaintiff's Reasonable Request for Reimbursement of Actual Litigation Costs .................................................................................................................25

    e.   Settlement Administration.........................................................................26

VI.   CONCLUSION.................................................................................................26

# TABLE OF AUTHORITIES

## CASES

*Aguirre v. Genesis Logistics*, No. SACV 12-00687 JVS (ANx), 2013 WL 10936035 at *2-*3 (C.D. Cal. 2013)....................................................................13

*Amalgamated Transit v. Laidlaw Transit Services, Inc.*, 2009 U.S. Dist. LEXIS 69842, *26 (S.D. Cal. 2009) ...............................................................................17

*Amaral v. Cintas*, 163 Cal. App. 4th 1157 (2008)..................................................17

*Amey v. Cinemark USA, Inc.*, 2015 WL 2251504, at *16 (N.D. Cal. 2015)...........17

*Arias v. Superior Court*, 46 Cal. 4th 969 (2009)...........................................3, 4, 6, 7

*Baumann v. Chase Inv. Servs. Corp.*, 747 F.3d 1117 (9th Cir. 2014).......................3

*Beaver v. Tarsadia Hotels* (S.D. Cal., Sept. 28, 2017, No. 11-CV-01842-GPC-KSC) 2017 WL 4310707, at *9..........................................................................14

*Blum v. Stenson*, 465 U.S. 886 (1984).....................................................................24

*Bowers v. First Student, Inc.*, 2015 WL 1862914, at *4 (C.D. Cal. Apr. 23, 2015) ...................................................................................................................................17

*Boyd v. Bank of America Corp.*, No. 8:13-0561-DOC (JPRx), at *14-18 (C.D. Cal. 2014)............................................................................................................................23

*Brown v. American Airlines*, CV 10-8431-AG (PJWx) (C.D. Cal. 2015) ..............17

*Cabrera v. Advantage Sale & Marketing, LLC*, Case No. BC485259, 2013 WL 1182822 (Super. Ct. L.A. County 2013)..................................................................12

*Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973 (9th Cir. 2008) ..........................24

*Carrington v. Starbucks Corp.*, 30 Cal. App. 5th 504 (2018)................................12

*Carter v. Anderson Merchandisers*, LP, No. EDCV 08-0025-VAP OPX, 2010 WL 1946784, at *8 (C.D. Cal. 2010) ..............................................................................9

*Casida v. Sears Holdings Corp.*, 2012 WL 253217 at *3 (E.D. Cal. 2012) ............6

*Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43 (2008) .............................................24

*Chavez v. Vallarta Food Enterprises, Inc*, No. BC490630 (L.A. County Super. Ct. Nov. 10, 2014)...........................................................................................................13

*Chu v. Wells Fargo Invst., LLC*, No. C 05–4526 MHP (N.D. Cal Feb. 16, 2011), 2011 WL 672645 at *1...............................................................................................13

*Coleman v. Estes Express Lines, Inc.*, No. BC429042 (L.A. County Super. Ct. Oct. 3, 2013)......................................................................................................................13

*Cotter v. Lyft, Inc.*, 193 F. Supp. 3d 1030 (N.D. Cal. 2016) ................................12

*Dearaujo v. Regis Corp.*, No. 2:14-cv-01408-KJM-AC (E.D. Cal. 2016), 2016 WL 3549473 at *3 .................................................................................................. 13

*Entin v. Barg*, 412 F.Supp. 508 (E.D. Pa. 1976) ............................................. 11

*Fernandez v. Victoria's Secret Stores, LLC*, No. CV 06-04149-MMM (SHx), 2008 WL 8150856, at *11-16 (C.D. Cal. 2008) .............................................. 23

*Fleming v. Covidien*, 2011 WL 7563047, at *4 (C.D. Cal. 2011) ..................... 12

*Flores v. Starwood Hotels & Resorts Worldwide, Inc.*, 253 F. Supp. 3d 1074 (C.D. Cal. 2017) ................................................................................................... 5

*Garcia v. Gordon Trucking, Inc.,* No. 1:10–CV–0324 AWI SKO (E.D. Cal. 2012), 2012 WL 5364575 at *7 ................................................................................... 13

*Glendora Community Redevelopment Agency v. Demeter*, 155 Cal. App. 3d 465 (1984) ............................................................................................................... 25

*Guerrero v. R.R. Donnelley & Sons Co.*, Case No. RIC 10005196 (Riverside County Super. Ct. July 16, 2013) .................................................................... 13

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ................................... 8

*Hollis v. Weatherford US LP*, No. 1:16-CV-00252-JLT, 2017 WL 131994, at *2 (E.D. Cal. 2017) ............................................................................................ 4, 5

*In re Activision Sec. Litig.*, 723 F.Supp. 1373, 1377-78 (N.D. Cal. 1989) ............. 15

*In Re Armored Car Antitrust Litig.*, 472 F.Supp. 1357 (N.D. Ga.1979) ............... 11

*In Re Four Seasons Secs. Laws Litig.*, 58 F.R.D. 19 (W.D. Okla.1972) ............... 11

*In re Microsoft I-V Cases*, 135 Cal. App. 4th 706 (2006) ................................... 11

*In re Pac. Enter.,* 47 F.3d at 379; *cf. Bebchick,* 805 F.2d at 408 .......................... 22

*In Re Sunrise Secs. Litig.*, 131 F.R.D. 450 (E.D. Pa. 1990) ................................ 11

*In re Syncor ERISA Litig.*, 516 F.3d 1095 (9th Cir. 2008) ................................... 8

*In re TD Ameritrade Account Holder Litig.*, Case No. C 07-2852 SBA, 2011 WL 4079226, *9 (N.D. Cal. 2011) ........................................................................... 5

*In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231 (D. Del. 2002) ................ 11

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291 (9th Cir. 1994) ...... 14

*In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d at 1299 ................ 21

*Junhee Lee v. Esra Jung*, No. 15-cv-01529-HRL, 2016 U.S. Dist. LEXIS 136162, at *2 (N.D. Cal. 2016) ......................................................................................... 4

*Ketchum v. Moses*, 24 Cal. 4th 1122 (2001) ..................................................... 25

iii

**MOTION FOR APPROVAL OF PAGA SETTLEMENT**

*Knight v. Red Door Salons*, Inc., 2009 WL 248367 (N.D. Cal. 2009)....................15

*Lealao v. Beneficial California, Inc.*, 82 Cal. App. 4th 19, 53 (2000)....................25

*Li v. A Perfect Day Franchise, Inc.*, No. 5:10-CV-01189-LHK, 2012 WL 2236752, at *17 (N.D. Cal. 2012) ...................................................................................12

*Litty v. Merrill Lynch & Co.*, 2014 U.S. Dist. LEXIS 160448, at *6-7 (C.D. Cal. 2014) ...........................................................................................................18

*Mendez v. Tween Brands, Inc.*, 2010 WL 2650571 at *4 (E.D. Cal. 2010)..............6

*Mills v. Elec. Auto–Lite Co.*, 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970).23

*Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 455 (E.D. Cal. 2013) .15, 22

*Nordstrom Com. Cases*, 186 Cal. App. 4th 576 (2010) .........................................12

*Noyes v. Kelly Servs., Inc.*, 2:02-CV-2685-GEB-CMK, 2008 WL 3154681 (E.D. Cal. 2008)........................................................................................................21

*O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110 (N.D. Cal. 2016)..................5

*Ochoa-Hernandez v. Cjaders Foods, Inc.*, No. C 08-2073 MHP, 2010 WL 1340777, at *1 (N.D. Cal. 2010).....................................................4, 6, 7

*Officers for Justice v. Civil Service Com.*, 688 F.2d 615 (9th Cir., 1982) ...........5, 11

*Ortiz v. CVS Caremark Corp.*, 2014 WL 1117614, at *4 (N.D. Cal. 2014) ...........18

*Parra v. Aero Port Services, Inc.*, No. BC483451 (L.A. County Super. Ct. April 20, 2015)...........................................................................................................13

*Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268 (9th Cir. 1989) ..............15

*Pedroza v. PetSmart, Inc.*, 2013 WL 1490667, at *15 (C.D. Cal. 2013).................6

*Penaloza v. PPG Industries Inc.*, Case No. BC471369, 2013 WL 2917624 at *2 (Super. Ct. L.A. County 2013).....................................................................11

*People v. Pacific Land Research Co.*, 20 Cal. 3d 10 (1977).....................................4

*Posner, Economic Analysis of the Law*, 534 (4th ed. 1992)....................................21

*Raphael v. Tesoro Ref. & Mktg. Co. LLC*, 2015 WL 5680310, at *2 (C.D. Cal. 2015)...............................................................................................................17

*Regino Primitivo Gomez, et al. v. H&R Gunlund Ranches*, Inc., No. CV F 10–1163 LJO MJS, 2011 WL 5884224 (E.D. Cal. 2011)..................................22

*Rodriguez v. West Publ'g Corp.*, 2007 WL 2827379, at *9 (C.D. Cal. 2007)........11

*Salazar v. McDonald's Corp.*, 2017 WL 88999 (N.D. Cal. 2017).........................17

*San Bernardino Valley Audubon Soc. v. County of San Bernardino*, 155 Cal. App. 3d 738 (1985) .....................................................................................................25

iv

**MOTION FOR APPROVAL OF PAGA SETTLEMENT**

*Sanchez v. McDonald's Rests. of Cal., Los Angeles Superior Court Case* No. BC499888.................................................................................................................18

*Serrano v. Priest*, 20 Cal. 3d 25 (1977)...........................................................24

*Smith v. Lux Retail N. Am., Inc.*, 2013 U.S. Dist. LEXIS 83562, at *9 (N.D. Cal. 2013).............................................................................................................18

*Syed v. M-I, L.L.C.*, No. 112CV01718DADMJS, 2017 WL 714367, at *13 (E.D. Cal. 2017)..............................................................................................................5

*Thomas v. Aetna Health of Cal., Inc.*, 2011 WL 2173715, at * 11 (E.D. Cal. 2011)6

*Thompson v. Smart & Final, Inc.*, No. BC497198 (L.A. County Super. Ct.2014). 13

*Thurman v. Bayshore Transit Mgmt.*, 203 Cal. App. 4th 1112 (2012) .............12, 17

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) ..........................passim

*Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224 (2001) ............................11

*Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224 (2001) ............................24

*Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 WL 1230826, at *6 (N.D. Cal. 2011)...................................................................................8, 9

*ZB, N.A. v. Superior Court*, 8 Cal. 5th 175 (2019)...........................................7

*Zhang v. Amgen*, 2015 WL 5752562, at *1 (Cal. Sup. 2015) ................................17

**STATUTES**

Cal. Lab. Code § 2699(c)........................................................................................8

Cal. Lab. Code § 2699(l)(2)....................................................................................9

Cal. Labor Code § 2699(i)..........................................................................9, 12, 18

California Labor Code § 226 .................................................................................17

Labor Code §2699(l)..............................................................................................10

Labor Code section 2699(a)(2)..............................................................................23

Labor Code Section 510 ........................................................................................23

**MOTION FOR APPROVAL OF PAGA SETTLEMENT**

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

Plaintiff Lourdes LeFevre ("Plaintiff"), on behalf of real party in interest the California Labor and Workforce Development Agency ("LWDA") and aggrieved employees, brings this unopposed motion and respectfully requests the Court approve the Parties' settlement of the LWDA's claims for civil penalties against Defendant. This case has been in hard fought litigation for over five (5) years.  The Parties' settlement was reached after this case was litigated to the Ninth Circuit and all the way up to the Supreme Court.   The settlement follows significant investigation into Plaintiff's claims, including an analysis of Plaintiff's likelihood of success and the amount of penalties recoverable (and the likelihood that the recoverable penalties would be discounted).  The settlement was reached following an arms-length negotiation overseen by an experienced representative/class action mediator.

The proposed settlement totals $3,062,000.00, which the Parties estimate will be allocated as follows:

- $1,505,601.46 to the LWDA;
- $501,867.16 to the Aggrieved Employees;
- $22,550.00 in administration costs;
- $1,020,666.67 in attorneys' fees; and,
- $11,314.71 in litigation costs and expenses.

The settlement is fair, reasonable, and adequate, and will provide a significant benefit to the LWDA and to the aggrieved employees while also deterring future alleged violations of the Labor Code while ensuring enforcement of California law.  Accordingly, Plaintiff respectfully requests the Court's approval of this settlement.

## II.   FACTUAL SUMMARY

Defendant Five Star Quality Care is a senior living provider operating in

California.  Plaintiff began working for Defendant on or around January 15, 2013, performing personal care at Five Star's Redlands location.  Plaintiff's primary job duties arose out of total care for patients, including those with terminal illnesses and severely debilitating conditions like Alzheimer's Disease and dementia.  On February 17, 2015, Plaintiff served Five Star and the LWDA with notice of intent to bring a PAGA action.  The underlying labor code violations Plaintiff alleges include unpaid wages, unpaid meal and rest period premiums, failure to timely pay final wages, non-compliant wage statements, and unreimbursed business expenses.

## III.   <u>PROCEDURAL POSTURE</u>

Plaintiff is a California resident who filed her PAGA and class action complaint in San Bernardino County Superior Court on May 20, 2015. (Dkt. 1.) The action was removed to federal court and the parties engaged in litigation related to Defendant's assertion that Maryland law, rather than California law, applied to disputes regarding the enforcement of the arbitration agreement and that, therefore, the representative action waiver contained therein was enforceable, meaning her PAGA claim should be dismissed or, in the alternative, her representative PAGA claims were waived based on Maryland law and her individual PAGA claim must be arbitrated. The Court denied Defendant's motion to compel arbitration on the individual PAGA claim. (Dkt 25.)

Defendant filed a notice of appeal to the Ninth Circuit to challenge the Court's denial of Defendant's motion to compel arbitration of the individual PAGA claim and the application of the choice of law provision to disputes related to the arbitration agreement. (Dkt. 28, 32.) On appeal, the Ninth Circuit affirmed the District Court's ruling applying California law and rejecting Defendant's argument that Maryland law applied. (Dkt. 47.)  The Ninth Circuit's December 6, 2017 ruling also rejected Defendant's contention that PAGA statutory claims were waived, and Plaintiff's claims were allowed to proceed. (Dkt. 47.)  Defendant then litigated the case to the United States Supreme Court.  Plaintiff filed an opposition

**MOTION FOR APPROVAL OF PAGA SETTLEMENT**

to Five Star's petition for writ of certiorari and the Supreme Court denied Defendant's writ petition.

After the appeals concluded, the Court held an evidentiary hearing regarding the remainder of Defendant's motion to dismiss the class claims and arbitrate Plaintiff's individual claims pursuant to the Parties' arbitration agreement. On November 12, 2019, the Court granted Defendant's motion to dismiss the class claims and stayed the remaining PAGA claim pending completion of arbitration proceedings on Plaintiff's individual claims. (Dkt. 75.)

With Plaintiff's PAGA claims pending and Plaintiff having initiated arbitration for non-PAGA claims, the parties engaged in a mediation with Tripper Ortman, Esq., an experienced class action/PAGA mediator.  After extensive pre-mediation disclosures and exchange of wage and hour data and discovery, and with the engagement of the neutral mediator, the parties reached a settlement of the PAGA claims.

## IV.   LEGAL STANDARD

The California Legislature enacted PAGA "to allow aggrieved employees, acting as private attorneys general, to recover civil penalties for Labor Code violations, with the understanding that labor law enforcement agencies were to retain primacy over private enforcement efforts." *Arias v. Superior Court*, 46 Cal. 4th 969, 980 (2009); *Baumann v. Chase Inv. Servs. Corp.*, 747 F.3d 1117, 1121 (9th Cir. 2014) ("If the California Labor and Workforce Development Agency ('LWDA') declines to investigate an alleged labor law violation or issue a citation, an aggrieved employee may commence a PAGA action against an employer 'personally and on behalf of other current or former employees to recover civil penalties for Labor Code violations.'"). An "aggrieved employee" is defined as "any person who was employed by the alleged violator and against whom one or more of the alleged violations was committed." Cal. Lab. Code § 2699(c).

"An employee plaintiff suing [under PAGA] does so as the proxy or agent of

3

the state's labor law enforcement agencies." *Arias*, 46 Cal. 4th at 986. An action for civil penalties under PAGA "is fundamentally a law enforcement action designed to protect the public and not to benefit private parties" *Id.* (quoting *People v. Pacific Land Research Co.*, 20 Cal. 3d 10, 17 (1977)). "Because an aggrieved employee's action under [PAGA] functions as a substitute for an action brought by the government itself, a judgment in that action binds all those, including nonparty aggrieved employees, who would be bound by a judgment in an action brought by the government." *Id.* "Of the civil penalties recovered, 75 percent goes to the California Labor and Workforce Development Agency, leaving the remaining 25 percent for the 'aggrieved employees.'" *Ochoa-Hernandez v. Cjaders Foods, Inc.*, No. C 08-2073 MHP, 2010 WL 1340777, at *1 (N.D. Cal. Apr. 2, 2010) (quoting Cal. Labor Code § 2699(i)).

Further, section 2699(l)(2) states, "[t]he superior court shall review and approve any settlement of any civil action filed pursuant to this part. The proposed settlement shall be submitted to the agency at the same time that it is submitted to the court." Cal. Lab. Code § 2699(l)(2). "A court has discretion to approve the settlement of PAGA claims if the settlement would be 'fair.'" *Junhee Lee v. Esra Jung*, No. 15-cv-01529-HRL, 2016 U.S. Dist. LEXIS 136162, at *2 (N.D. Cal. Sep. 29, 2016). "The court may consider factors such as the merits of the action, the maximum recovery the plaintiff could obtain if the merits were decided in his favor, and 'how and why [the] parties arrived at the settlement amount.'" *Hollis v. Weatherford US LP*, No. 1:16-CV-00252-JLT, 2017 WL 131994, at *2 (E.D. Cal. Jan. 12, 2017).

The LWDA has suggested some guidelines for approving PAGA claims, which have been cited with approval by a number of courts: when a PAGA claim is settled, the relief provided for under the PAGA [should] be genuine and meaningful, consistent with the underlying purpose of the statute to benefit the public and, in the context of a class action, the court [should] evaluate whether the

4

settlement meets the standards of being fundamentally fair, reasonable, and adequate with reference to the public policies underlying the PAGA. *Syed v. M-I, L.L.C.*, No. 112CV01718DADMJS, 2017 WL 714367, at *13 (E.D. Cal. Feb. 22, 2017) (internal quotations and citations omitted); *O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1133 (N.D. Cal. 2016).

In doing so, the Court may "consider factors such as the merits of the action, the maximum recovery the plaintiff could obtain if the merits were decided in his favor, and 'how and why [the] parties arrived at the settlement amount.'" *Hollis*, 2017 WL 131994 at *2. As other courts in this district have found, however, "the Act is surprisingly short on specifics," and neither the California legislature, the LWDA, nor California courts have identified "the appropriate standard for approval of such a settlement." *Flores v. Starwood Hotels & Resorts Worldwide, Inc.*, 253 F. Supp. 3d 1074, 1075 (C.D. Cal. 2017). As a result, "[f]ederal district courts, sitting in diversity, have often been left to their own devices in this area of great importance to the citizens of California." *Id.* at 1075-76.

## V.   **LEGAL ARGUMENT**

### a.  **Standard for Approval of PAGA Settlement**

The settlement of a PAGA claim requires court approval. Labor Code §2699(l). In reviewing a proposed PAGA settlement, courts are encouraged to be mindful that "[s]ettlement is a compromise, which balances the possible recovery against the risks inherent in litigating further." *In re TD Ameritrade Account Holder Litig.*, Case No. C 07-2852 SBA, 2011 WL 4079226, *9 (N.D. Cal. Sept. 13, 2011). Indeed, "the very essence of a settlement is … 'a yielding of absolutes and an abandoning of highest hopes,'" as "it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Officers for Justice v. Civil Service Com.*, 688 F.2d 615, 624-25 (9th Cir., 1982) (internal citations omitted). As such, "the settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits,"

or "judged against a hypothetical or speculative measure of what might have been achieved." *Id.*

Although the operative PAGA statute does not set forth the criteria by which a PAGA settlement is to be judged, courts often analyze the factors used to review of a class action settlement. In doing so, however, courts should be mindful that "a PAGA claim asserted on a non-class representative basis . . . is not considered a class action but a law enforcement action, and therefore does not have to meet the requirements of [a class action]." *Casida v. Sears Holdings Corp.*, 2012 WL 253217 at *3 (E.D. Cal. Jan. 26, 2012); *Thomas v. Aetna Health of Cal., Inc.*, 2011 WL 2173715, at * 11 (E.D. Cal June 2, 2011); *Arias v. Superior Court*, 46 Cal. 4th 969, 980-88 (affirming lower court's holding that "plaintiff need not satisfy class action requirements" to assert a PAGA claim); *Pedroza v. PetSmart, Inc.*, 2013 WL 1490667, at *15 (C.D. Cal. Jan. 28, 2013); *Mendez v. Tween Brands, Inc.*, 2010 WL 2650571 at *4 (E.D. Cal. Jul. 1, 2010). A court's review of a PAGA settlement necessarily implicates the following unique features that render the approval process distinct from approval of a class action settlement under Rule 23.

First, in evaluating the adequacy of the settlement amount, the Court's focus is not concerned with the amount(s) that "aggrieved employees" are to receive, but rather, must focus on the total settlement amount in achieving PAGA's law enforcement objective. Indeed, "[t]he remedy sought in a PAGA suit consists of civil penalties, not individual or class damages," and a "[PAGA] action is … designed to protect the public and penalize the employer for past illegal conduct," not to compensate aggrieved employees. *Mendez*, *supra*, 2010 WL 2650571 at *4; *see also Ochoa-Hernandez v. Cjaders Foods, Inc.*, 2010 WL 1340777 at *4 (N.D. Cal. Apr. 2, 2010) ("Unlike class actions, these civil penalties are not meant to compensate unnamed employees because the action is fundamentally a law enforcement action.").

As the court in *Ochoa-Hernandez* further explained, "[u]nlike a class action

seeking damages or injunctive relief for injured employees, the purpose of PAGA is to incentivize private parties to recover civil penalties for the government that otherwise may not have been assessed and collected by overburdened state enforcement agencies." *Id*. For these reasons, the California Legislature determined that the State of California should receive the bulk of the proceeds – 75% – of any PAGA settlement or judgment. Lab. Code § 2699(i); *see also ZB, N.A. v. Superior Court*, 8 Cal. 5th 175, 198 (2019).

Second, consistent with the fact that unnamed employees have no property interest in a PAGA claim, "[u]nnamed employees need not be given notice of the PAGA claim, nor do they have the ability to opt-out of the representative PAGA claim." *Ochoa-Hernandez*, 2010 WL 1340777 at *5. This renders the approval process of a PAGA settlement distinct from a class action settlement, as there is no need for the Court to employ the two-step approval process required under Rule 23.

Finally, unlike class action settlements under Rule 23, the scope of release permitted in a PAGA settlement is limited. While "judgment in [a PAGA] action is binding not only on the named employee plaintiff but also on government agencies and any aggrieved employee not a party to the proceeding . . . the non-party employees, because they were not given notice of the action or afforded any opportunity to be heard, would not be bound by the judgment as to remedies other than civil penalties." *Arias, supra*, 46 Cal.4th at 986-87 (2009); *see also ZB, N.A.*, *supra*, 8 Cal. 5th at 196 ("Nonparty employees are bound by the judgment in an action under the PAGA, but only with respect to recovery of civil penalties"). Thus, the scope of a release in a PAGA settlement does not include the release of the aggrieved employees' statutory or common law claims for damages and/or restitution.

### b.  The Proposed Settlement is Fair, Adequate and Reasonable

The Settlement Agreement is attached to the accompanying declaration of

7

**MOTION FOR APPROVAL OF PAGA SETTLEMENT**

Michael W. Parks as Exhibit "A" and the complete terms are described therein. (Declaration of Michael W. Parks ("Parks Decl."), ¶¶12-18; Ex. "A".)  The Court's role in evaluating a proposed settlement is limited to ensuring that the agreement taken as a whole is fair and is not the product of fraud or collusion between the negotiating parties. *See, e.g., Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1027 (9th Cir. 1998). Courts apply a presumption of fairness "if the settlement is recommended by class counsel after arm's-length bargaining." *Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 WL 1230826, at *6 (N.D. Cal. Apr. 1, 2011). There is also "a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig*., 516 F.3d 1095, 1101 (9th Cir. 2008). Although this case is not a class action, the same presumptions and policies apply to this case as well.

As discussed below, this settlement is presumed to be fair because it was reached after arms-length negotiations with an experienced and respected mediator, without any evidence of collusion or fraud. The terms of the settlement are also objectively fair to the LWDA given the risks inherent in litigation, and the defenses to liability and representative recovery presented by Defendant in this particular case.

### i.   *The Settlement is the Result of Arms-Length Negotiations*

The parties engaged in adversarial settlement negotiations after significant statistical analysis of data, informal discovery, calculation of liability by Plaintiff's counsel, and the assistance of an experienced wage-and-hour mediator. (Parks Decl., ¶ 3). Counsel for the parties aggressively pursued their respective positions before eventually reaching an agreement. (*Id*.) Each side provided the other with several settlement proposals before the agreement was reached. (*Id*.) The negotiations were rigorous and conducted at arm's-length. (*Id*.)  The Settlement cannot be described as fraudulent or collusive. (*Id*.) Rather, the Settlement is the product of informed and rigorous negotiations by experienced counsel. (*Id*.)

**MOTION FOR APPROVAL OF PAGA SETTLEMENT**

Because the proposed settlement was the result of arms-length negotiations, and there is no evidence of fraud or collusion, the proposed settlement is presumed to be fair. *Wren*, 2011 WL 1230826, at *6.

### ii. *Plaintiff and Her Counsel Support the Settlement After Significant Investigation of the Factual and Legal Issues*

Where counsel are qualified to represent the proposed class in a settlement based on their prior class and other representative action experience and familiarity with the strengths and weaknesses of the action, the support of Plaintiff's counsel is an important factor that, in turn, supports finding of fairness. *Wren*, 2011 WL 1230826, at *10; *Carter v. Anderson Merchandisers*, LP, No. EDCV 08-0025-VAP OPX, 2010 WL 1946784, at *8 (C.D. Cal. May 11, 2010) ("Counsel's opinion is accorded considerable weight.").

Plaintiff's counsel has experience prosecuting class and representative wage-and-hour litigation. (Parks Decl., ¶¶ 7-11.) Prior to reaching an agreement to settle the PAGA claims, the parties engaged in formal and informal discovery. (Parks Decl., ¶ 4.) Defendant provided the following information to Plaintiff's counsel prior to mediation: (1) Plaintiff's wage statements, personnel file, and payroll records; (2) Defendant's handbooks in effect during the relevant limitations periods; (3) forms used by Defendant and its employees relevant to Plaintiff's claims; (4) a sampling of employee schedules, (5) over five years' worth of timekeeping data consisting of over 300,000 work weeks and approximately 180,000 pay periods for approximately 5,000 of Defendant's employees; (6) over five years' worth of payroll data for the same group of employees; (7) additional statistics for the group of aggrieved employees. (*Id.*)

Using this information, Plaintiff was able to determine or estimate: (i) rates of pay for the aggrieved employees; (ii) the total number of former and current employees who worked during the relevant period; (iii) the total number of shifts worked by all aggrieved employees during the relevant period; (iv) the number of

9

workweeks during the relevant period; (v) the number of pay periods during the relevant period; (vi) the timing and length of meal breaks taken by the aggrieved employees; (vii) the number of rest breaks and meal periods to which employees were entitled during each shift worked; (viii) the amount of meal period and rest break premiums paid by Defendant during the relevant period; (ix) the scope and extent of Defendant's wage and hour policies, practices, and procedures; (x) the amounts owed and paid for overtime and double time; (xi) wage statement compliance; and, (xii) reimbursement of business expenses. (Parks Decl., ¶ 5.)

Based on this representative data, Plaintiff performed an analysis of potential PAGA penalties that could be recovered, and the likelihood of recovering the same based on Defendant's defenses to liability and the ability of the Court to award reduced penalties. (*Id*.) Plaintiff undertook comprehensive and complex mathematical calculations to create a damages model assuming varying rates of violation per labor code section and per pay period. (*Id*.) Plaintiff did a thorough analysis of the written wage and hour policies and conducted targeted legal research regarding wage and hour issues specific to Defendant's industry, in addition to trends within the district courts regarding assessing and levying PAGA penalties following a bench trial. (*Id*.)

After evaluating the factual allegations and legal issues that would arise prior to and during trial, including a review of the data and information discussed above, and considering the uncertainties and expenses of further protracted litigation in a case that had already been pending for five (5) years, the Parties settled the case in an amount that reflects a fair compromise that confers substantial benefit upon the State of California and the aggrieved employees. Therefore, Plaintiff and her counsel have determined that the settlement is in the best interests of all parties, including the State of California and the aggrieved employees. (Parks Decl., ¶ 6.) Plaintiff's counsel's determination was made after taking into account all factors that would affect Plaintiff's ability to recover civil

10

penalties on behalf of the LWDA. Plaintiff agreed to settle the LWDA's claims for civil penalties only after performing such an analysis. (*Id.*)   The settlement was reached as a result of the substantial work performed by Plaintiff's Counsel. (Parks Decl., ¶ 19-23.)

### iii.   *The Terms of the Settlement Are Fair and Reasonable*

In evaluating the fairness of a proposed settlement, "the test is not the maximum amount Plaintiff might have obtained at trial on the complaint, but rather whether the settlement is reasonable under all of the circumstances." *Wershba v. Apple Computer, Inc*., 91 Cal. App. 4th 224, 250 (2001); *see also In re Microsoft I-V Cases*, 135 Cal. App. 4th 706, 723 (2006) ("[courts] should give due regard . . . to what is otherwise a private consensual agreement between the parties" and limit "its inquiry to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching").

Courts routinely approve settlements that provide a fraction of the maximum potential recovery. *See, e.g., Officers for Justice, supra*, 688 F.2d at 623 ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair."); *see also Rodriguez v. West Publ'g Corp*., 2007 WL 2827379, at *9 (C.D. Cal. Sept. 10, 2007) (approving 30% of damages); *In re Warfarin Sodium Antitrust Litig*., 212 F.R.D. 231, 256-58 (D. Del. 2002) (approving 33% of damages); *In Re Sunrise Secs. Litig*., 131 F.R.D. 450, 457 (E.D. Pa. 1990) (approving 20% of damages); *In Re Armored Car Antitrust Litig*., 472 F.Supp. 1357, 1373 (N.D. Ga.1979) (settlements with a value of 1% to 8% of the estimated total damages were approved); *Entin v. Barg*, 412 F.Supp. 508, 514 (E.D. Pa. 1976) (approving 17% of damages); *In Re Four Seasons Secs. Laws Litig*., 58 F.R.D. 19, 37 (W.D. Okla.1972) (approving 8% of damages); *Penaloza v. PPG Industries Inc*., Case No. BC471369, 2013 WL 2917624 at *2 (Super. Ct. L.A. County, May 20, 2013) (approving PAGA penalties averaging **$7.49 per aggrieved employee** ($5,000 /

667 aggrieved employees)); *Cabrera v. Advantage Sale & Marketing, LLC*, Case No. BC485259, 2013 WL 1182822 (Super. Ct. L.A. County, March 12, 2013) (approving PAGA penalties averaging **$3.33 per aggrieved employee** ($10,000 / 3,000 aggrieved employees). In turn, courts have **approved PAGA settlements of $0**. *See, e.g., Nordstrom Com. Cases*, 186 Cal. App. 4th 576, 589 (2010) ("find[ing] no abuse of discretion in the trial court's approval of the settlement agreement containing" $0 for the PAGA claim).

Such discounts are particularly appropriate in PAGA actions, in which Courts exercise significant discretion in the amount of penalties to award. *See Carrington v. Starbucks Corp.*, 30 Cal. App. 5th 504, 529 (2018) (awarding 0.2% of maximum PAGA penalties); *see also Cotter v. Lyft, Inc.*, 193 F. Supp. 3d 1030, 1037 (N.D. Cal. 2016); *Fleming v. Covidien*, 2011 WL 7563047, at *4 (C.D. Cal. 2011). During the penalty phase in *Carrington*, the plaintiff requested PAGA penalties of approximately $70 million, but was awarded only $150,000—or **<u>0.21% of the maximum</u>**—and the court found this warranted because imposing the maximum penalty would be "unjust, arbitrary, and oppressive" based on Starbucks's "good faith attempts" to comply with meal period obligations and because the court found the violations were minimal. *Carrington*, 30 Cal. App. 5th at 517. This was affirmed on appeal. *Id.* at 529.

Likewise, in *Cotter*, the Court found that a $1 million PAGA settlement was fair and reasonable in light of the unsettled nature of the law, resulting in a 97.5% reduction from the maximum. And in *Covidien*, the Court reduced the potential penalties by over 82%. *See also, e.g., Thurman v. Bayshore Transit Mgmt.*, 203 Cal. App. 4th 1112, 1135-36 (2012) (30% reduction where the employer produced evidence that it took its obligations seriously); *Li v. A Perfect Day Franchise, Inc.*, No. 5:10-CV-01189-LHK, 2012 WL 2236752, at *17 (N.D. Cal. June 15, 2012) (denying PAGA penalties for violation of California Labor Code § 226 as redundant with recovery on a class basis); *Aguirre v. Genesis Logistics*, No. SACV

12-00687 JVS (ANx), 2013 WL 10936035 at *2-*3 (C.D. Cal. Dec. 30, 2013) (reducing penalty for past PAGA violations from $1.8 million to $500,000.00, after rejecting numerous other PAGA claims).

Here, the proposed settlement confers substantial benefits on the real party in interest the State of California, as well as the aggrieved employees. In particular, Defendant is expected to pay approximately $1,505,601.46 to the LWDA, an amount that will be used "for enforcement of labor laws … and for education of employers and employees about their rights and responsibilities under [the California Labor] code." Lab. Code § 2699(i). This amount is significantly more than the amount allocated to the LWDA in other judicially approved settlements of PAGA claims in hybrid actions. *See Dearaujo v. Regis Corp.*, No. 2:14-cv-01408-KJM-AC (E.D. Cal. June 29, 2016), 2016 WL 3549473 at *3 ($1.95 million settlement allocating $10,000 to PAGA penalties); *Garcia v. Gordon Trucking, Inc.,* No. 1:10–CV–0324 AWI SKO (E.D. Cal. Oct. 31, 2012), 2012 WL 5364575 at *7 ($3.9 million settlement allocating $10,000 to PAGA penalties); *Chu v. Wells Fargo Invst., LLC*, No. C 05–4526 MHP (N.D. Cal Feb. 16, 2011), 2011 WL 672645 at *1 ($6.9 million settlement allocating $10,000 to PAGA penalties); *Guerrero v. R.R. Donnelley & Sons Co.*, Case No. RIC 10005196 (Riverside County Super. Ct. July 16, 2013; Judge Matthew C. Perantoni) ($1.1 million settlement allocating $3,000 to PAGA penalties); *Parra v. Aero Port Services, Inc.*, No. BC483451 (L.A. County Super. Ct. April 20, 2015; Judge Jane Johnson) ($1.4 million settlement allocating $5,000 to PAGA penalties); *Thompson v. Smart & Final, Inc.*, No. BC497198 (L.A. County Super. Ct. Nov. 18, 2014; Judge William F. Highberger) ($3 million settlement allocating $13,333 to PAGA penalties); *Chavez v. Vallarta Food Enterprises, Inc.*, No. BC490630 (L.A. County Super. Ct. Nov. 10, 2014; Judge William F. Highberger) ($1.5 million settlement allocating $10,000 to PAGA penalties); *Coleman v. Estes Express Lines, Inc.*, No. BC429042 (L.A. County Super. Ct. Oct. 3, 2013; Judge Kenneth R. Freeman) ($1.5 million

**MOTION FOR APPROVAL OF PAGA SETTLEMENT**

settlement allocating $1,000 to PAGA penalties).   The LWDA is being concurrently served with this motion and the settlement agreement prior to this Court hearing the approval motion.  (Parks Decl. ¶40.)

### c.  The Requested Attorneys' Fees and Costs are Reasonable

Plaintiff respectfully requests that the Court award 33 1/3% of the gross settlement amount in attorneys' fees.  An award of 33 1/3% for fees is appropriate in this case and Defendant does not oppose or object to this request.  Foremost, Plaintiff acted as a proxy on behalf of the State of California zealously battling to keep this PAGA case alive, first by successfully opposing Defendant's efforts to dismiss Plaintiff's PAGA claim or, in the alternative, to compel Plaintiff's individual PAGA claim into arbitration by enforcing the representative action waiver in the arbitration agreement pursuant to Maryland law and then by protecting this Court's favorable rulings in the 9th Circuit appeal and SCOTUS. Plaintiff's Counsel undertook this appellate contest on a contingency basis notwithstanding the extreme risk of no return, prolonged litigation delays, and additional costs to boot.   After Plaintiff's Counsel successfully opposed Defendant's appeals and reinstated the case in this Court, Plaintiff's Counsel was able to negotiate a significant seven figure settlement on behalf of Defendant's California employees in the midst of the Coronavirus Pandemic and emergency shutdowns.

When evaluating attorneys' fees, the Ninth Circuit has held that "the district court has discretion in common fund cases to choose either the percentage-of-the-fund or the lodestar method." *Vizcaino v. Microsoft Corp*., 290 F.3d 1043, 1047 (9th Cir. 2002) (citing *In re Wash. Pub. Power Supply Sys. Sec. Litig*., 19 F.3d 1291, 1295–96 (9th Cir. 1994)). "California courts routinely award attorneys' fees of one third of the common fund."   *Beaver v. Tarsadia Hotels* (S.D. Cal., Sept. 28, 2017, No. 11-CV-01842-GPC-KSC) 2017 WL 4310707, at *9.  When using the percentage-of-the-fund method, "courts typically set a benchmark of 25% of the

fund as a reasonable fee award, and justify any increase or decrease from this amount based on circumstances in the record." *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 455 (E.D. Cal. 2013); *see Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989).   The exact percentage varies depending on the facts of the case, and in "most common fund cases, the award exceeds that benchmark." *Id.* (*citing Knight v. Red Door Salons*, Inc., 2009 WL 248367 (N.D. Cal. 2009); *In re Activision Sec. Litig.*, 723 F.Supp. 1373, 1377-78 (N.D. Cal. 1989) ("nearly all common fund awards range around 30%")). The percentage may be adjusted upward or downward based on (1) the results achieved; (2) the risks of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee; (5) the burdens carried by counsel; and (6) the awards made in similar cases. *Monterrubio*, 291 F.R.D. at 455 (citing *Vizcaino*, 290 F.3d at 1048–50).

As described below, all the factors weigh in favor of awarding Plaintiff's Counsel an award of 33 1/3% in attorneys' fees.

### i.  The Results Achieved

Here, the approximately 5,000 employees whose data Plaintiff reviewed prior to mediation worked approximately 180,000 pay periods. Thus, at the default penalty rate of $100 per employee per pay period for an initial violation pursuant to Labor Code section 2699(f), Plaintiff could have obtained a maximum of $18 million in PAGA penalties assuming a 100% violation rate. Thus, Plaintiff's $3M settlement translates to almost 17% of the soaking wet total verdict value. Moreover, assuming a 100% violation rate, Plaintiff was able to successfully negotiate a settlement yielding approximately $17 per pay period for the employees, which in Plaintiff's experience, is considerably well above an average market value threshold on these cases.

Realistically though, the full penalty value is almost never assessed, and there is almost never a 100% violation rate.   In Plaintiff's experience, actual

violation rates can be closer to 25%.  For example, the data provided by Defendant showed that during the relevant time period while there were incidents of missed meal and rest breaks, there were also incidents where Defendant paid meal and rest break premiums to its California employees and where Defendant's employees frequently took compliant meal periods.   Moreover, Defendant's employee handbooks and policies arguably "provided" for meal breaks and employees may have chosen not to take them or decided to cut them short without any incentivization or adverse actions by the employer.   The wage statements also revealed incidents where the employer provided compliant overtime and double time payments and where there were no independent wage statement issues other than derivative claims.   Defendant could also have raised arguable disputes over reimbursable business expenses and limitations on claims Plaintiff could raise in complying with Five Star's dress code.   A significant aspect of Plaintiff's rest break theory also rested on a disputed interpretation of the *Augustus* case, particularly with respect to whether *Augustus* applied to Five Star healthcare workers subject to the definition of work under Califorinia Wage Order 5 (i.e., the FLSA suffered and permit standard) versus the "control" standard that was applied to the putative class in *Augustus*.

If this case proceeded to trial, it is more than likely that the violation rate on Plaintiff's best theories could have been well below 50%.  Even assuming a 50% violation rate, the maximum penalty gross utilizing the full $100 penalty without reduction would have been $9 million.  Plaintiff's Counsel's settlement of this case for $3 million achieves a settlement result that is fully 1/3rd the realistic total verdict value at a 50% violation rate, assuming the full $100 penalty and with NO REDUCTION to the penalty amount.

However, as explained above, Courts regularly exercise discretion to lower the penalty amounts to double or even single digits, especially in cases where, as here, there is no Labor Commissioner finding or ruling or evidence of blatant

16

willful misconduct.. *See Thurman v. Bayshore Transit Management, Inc*., 203 Cal. App. 4th 1112, 1135 (2012); *see also Amaral v. Cintas*, 163 Cal. App. 4th 1157, 1209 (2008) ("Until the employer has been notified that it is violating a Labor Code provision (whether or not the commissioner or court chooses to impose penalties), the employer cannot be presumed to be aware that its continuing underpayment of employees is a 'violation' subject to penalties."); *Amalgamated Transit v. Laidlaw Transit Services, Inc*., 2009 U.S. Dist. LEXIS 69842, *26 (S.D. Cal. Aug. 10, 2009).

Moreover, Defendant contends that all their relevant policies were lawful, such that Defendant would argue that trial would be unmanageable due to the individualized inquiry necessary to determine if and why its written policies were not followed. *See, e.g., Salazar v. McDonald's Corp*., 2017 WL 88999 (N.D. Cal. Jan. 5, 2017) (striking plaintiff's PAGA claim as unmanageable); *Brown v. American Airlines*, CV 10-8431-AG (PJWx) (C.D. Cal. Oct. 5, 2015) (granting motion to strike PAGA claim for unpaid overtime because claim necessarily required too many individualized assessments); *Raphael v. Tesoro Ref. & Mktg. Co. LLC*, 2015 WL 5680310, at *2 (C.D. Cal. Sept. 25, 2015) (plaintiff's claims would require the court to engage in a "multitude of individualized inquires making the PAGA action unmanageable and inappropriate."); *Zhang v. Amgen*, 2015 WL 5752562, at *1 (Cal. Sup. Aug. 13, 2015) (dismissing a plaintiff's PAGA representative action on the basis that "the variance in what the [alleged "aggrieved employees"] do is sufficiently varied that using [plaintiff], and what he does, is not a valid measure of what the others do"); *Amey v. Cinemark USA, Inc*., 2015 WL 2251504, at *16 (N.D. Cal. May 13, 2015) ("[W]hen the evidence shows, as it does here, that numerous individualized determinations would be necessary to determine whether any class member has been injured by Cinemark's conduct, then allowing a representative action to proceed is inappropriate."); *Bowers v. First Student, Inc*., 2015 WL 1862914, at *4 (C.D. Cal. Apr. 23, 2015) ("Even if Rule 23

17

**MOTION FOR APPROVAL OF PAGA SETTLEMENT**

did not apply to PAGA representative claims, such claims can be stricken if they are found to be 'unmanageable.'"); *Litty v. Merrill Lynch & Co.*, 2014 U.S. Dist. LEXIS 160448, at *6-7 (C.D. Cal. Nov. 10, 2014) (striking PAGA claim where "[t]he circumstances of this case make the PAGA claim unmanageable because a multitude of individualized assessments would be necessary"); *Ortiz v. CVS Caremark Corp.*, 2014 WL 1117614, at *4 (N.D. Cal. Mar. 19, 2014) (dismissing PAGA claim as unmanageable where "a multitude of individualized assessments would be necessary").

Finally, defendants in other cases have successfully argued that a Plaintiff cannot "stack" multiple penalties in a given pay period. *See, e.g., Sanchez v. McDonald's Rests. of Cal., Los Angeles Superior Court Case* No. BC499888 (rejecting plaintiffs' attempt to "stack" penalties under Section 1174.5 or Labor Code Section 510); *Smith v. Lux Retail N. Am., Inc*., 2013 U.S. Dist. LEXIS 83562, at *9 (N.D. Cal., June 13, 2013) (questioning whether a court "would really pile one penalty on another for a single substantive wrong").

Considering the above, and a Court's ability at trial to further reduce the recovery of penalties where the "facts and circumstances … otherwise would result in an award that is unjust, arbitrary and oppressive, or confiscatory," (Labor Code section 2699(a)(2)), the gross settlement sum of $3,062,000.00 achieved in this case by Plaintiff's Counsel is significant as a fair and reasonable outcome.

### ii. The Risks of Litigation

There were several significant substantive risks associated with litigating this case in addition to the inherent risks involved with taking a case like this on a contingency basis.  In *Vizcaino v. Microsoft Corp.*, the court awarded a higher attorneys' fee percentage after finding "that counsel pursued this case in the absence of supporting precedents, in the face of agreements signed by the class members forsaking benefits." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002).  Similarly, Plaintiff's Counsel here faced an arbitration agreement

with a waiver of PAGA rights in addition to a Maryland choice of law provision related to enforcement of the arbitration agreement that could have, arguably, extinguished Plaintiff's ability to have this case adjudicated in court. Defendant's argument invoking the contractual choice of law provision to validate a PAGA waiver was novel and the legal authority on this issue was neither established nor clear. Ultimately, like *Vizcaino*, Plaintiff's Counsel succeeded in opposing Defendant's appeal. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002).

Furthermore, it cannot be overstated that this settlement was achieved under challenging circumstances of a pandemic and the risks and uncertainties created by COVID-19. Litigation risks include the dangers of witnesses becoming unavailable due to tragic health circumstances or loss of employment, further significant delays in conducting discovery and proceeding to trial, and uncertainty over financial condition. The Parties' use of technology and engagement of a mediator with a strong reputation allowed both sides to weigh the risks and benefits of continued litigation and reach a negotiated settlement.

### iii. The Skill Required and the Quality of Work

An increase beyond the 25% benchmark is warranted where, as here, "counsel's performance generated benefits beyond the cash settlement." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1049 (9th Cir. 2002). Plaintiff's Counsel's work product was a catalyst for non-monetary outcomes that inured to the benefit of the State of California and its employees.

First, Plaintiff's successfully opposed Defendant's novel argument that a Maryland choice of law provision in an arbitration agreement validated a PAGA waiver that would otherwise be unenforceable in California. In doing so, Plaintiff's Counsel preserved the LWDA's ability to vindicate its jurisdiction and adjudicate this case in court. Plaintiff's efforts created precedent protecting the rights of future aggrieved California employees at Five Star facing claims that a

Maryland "choice of law" provision pertaining to disputes over enforcement of an arbitration agreement containing a representative action waiver can be invoked to enforce the waiver of a PAGA claim, while strengthening California's fundamental policy to encourage private enforcement of Labor Code violations.

Second, although Defendant disputes liability and maintains that it has complied with Federal and California law, the Parties agreed, and the settlement agreement states, that "[d]uring the course of this litigation, Defendant has updated its written employment policies applicable to California non-exempt employees." *See* p. 4, Section 2(b), Settlement Agreement.  Based on the successful challenge against Five Star's  Maryland choice of law provision over California law with respect to the enforcement of the arbitration agreement, California employees' rights under PAGA are protected.

Moreover, this settlement was reached during the peak of the coronavirus pandemic and emergency shutdowns.  Courts had barely reopened and the Parties were in uncharted territory without any true indicator as to what the future looked like for legal professionals and litigants.  Plaintiff's ability to navigate a substantial settlement despite these risks is a true testament to the result achieved.  Under the circumstances, Plaintiff's Counsel's ability to negotiate a significant monetary result coupled with the non-monetary benefits achieved for the State of California and its employees supports granting Plaintiff's request for attorneys' fees.

The size of the settlement is also a notable accomplishment when compared to other PAGA recoveries.  Indeed, it is significant that the outcome achieved in this case represents one-third of the potential recoverable dollar amount had Plaintiff taken this case to trial, prevailed and recovered the maximum penalty allowable at a 50% violation rate.   Plaintiff has obtained a seven-figure recovery for the State, obtained a determination that Five Star must apply California law over its choice of Maryland law, and has obtained significant recovery for aggrieved employees throughout the state.

**MOTION FOR APPROVAL OF PAGA SETTLEMENT**

### iv.  The Contingent Nature of the Fee

The challenges that Plaintiff's counsel had to confront and the risks they had to fully absorb on behalf of the LWDA and aggrieved employees are precisely the reasons for multipliers in contingency fee cases. *See, e.g., Noyes v. Kelly Servs., Inc.*, 2:02-CV-2685-GEB-CMK, 2008 WL 3154681 (E.D. Cal. Aug. 4, 2008); *Posner, Economic Analysis of the Law*, 534, 567 (4th ed. 1992) ("A contingent fee must be higher than a fee for the same legal services paid as they are performed… because the risk of default (the loss of the case, which cancels the debt of the client to the lawyer) is much higher than that of conventional loans").

Attorneys who litigate on a wholly or partially contingent basis expect to receive significantly higher effective hourly rates in cases where compensation is contingent on success, particularly in cases where, like in the case at bar, the result is uncertain. This does not result in any windfall or undue bonus. In the legal marketplace, a lawyer who assumes a significant financial risk on behalf of a client rightfully expects that his or her compensation will be significantly greater than if no risk was involved (i.e., if the client paid the bill on a monthly basis), and that the greater the risk, the greater the "enhancement."

Adjusting court-awarded fees upward in contingent fee cases, like this one, to reflect the risk of recovering no compensation whatsoever for hundreds of hours of labor simply makes those fee awards consistent with the legal marketplace, and in so doing, helps to ensure that meritorious cases will be brought to enforce important public interest policies and that clients who have meritorious claims will be better able to obtain qualified counsel.

"It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases." *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d at 1299. Thus, whether Plaintiffs' Counsel have taken the case on a contingency fee basis must be considered when deciding to vary from the

25% benchmark. *Monterrubio*, 291 F.R.D. at 457. Thus, this factor weighs in favor of an upward deviation from the benchmark.

### v. The Burdens Carried by Counsel

The burden and cost associated with taking a case on a contingency basis is ever present. However, Defendant's decision to appeal the Court's order denying Defendant's motion to compel arbitration as to the PAGA claim amplified the burden carried by Plaintiff's Counsel exponentially. Delays caused by the appellate system are inevitable, and for contingency based plaintiffs' firms, these delays are weighted. This is especially true for small boutique firms like Plaintiff's Counsel's. Plaintiff's Counsel's firm consists of two partners and one associate. It took over five (5) years of protracted litigation before the settlement outcome in this case was achieved, and this result was only achieved after successfully opposing Defendant's appeal to the 9th Circuit and Supreme Court. Thus, this factor weighs in favor of the proposed fee enhancement.

### vi. The Awards Made in Similar Cases

In California, federal and state courts have customarily approved payments of attorneys' fees amounting to or exceeding 33 1/3% of the common fund in comparable wage and hour class actions, which is what Plaintiff's Counsel is requesting here. *See Regino Primitivo Gomez, et al. v. H&R Gunlund Ranches, Inc.*, No. CV F 10–1163 LJO MJS, 2011 WL 5884224 (E.D. Cal. 2011) (approving attorneys' fees award equal to 45% of the settlement fund).

An award higher than 25% is warranted here, like *Vizcaino*, because Plaintiff's Counsel achieved nonmonetary benefits that inured to the public benefit in California. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1049 (9th Cir. 2002); *see* also *See In re Pac. Enter.*, 47 F.3d at 379 (considering "nonmonetary benefits in the derivative settlement"); *cf. Bebchick*, 805 F.2d at 408 (allowing an upward adjustment to the lodestar "to reflect the benefits to the public flowing from [the] litigation"); *Mills v. Elec. Auto–Lite Co.*, 396 U.S. 375, 395, 90 S.Ct. 616, 24

L.Ed.2d 593 (1970) (stating that a corporation may receive a substantial benefit from a derivative suit justifying a fee award regardless of whether the benefit is pecuniary).

Plaintiff's Counsel should also be awarded a higher percentage because, like other cases, Plaintiff's Counsel was able to settle this case for one third of the maximum verdict value assuming a reasonable 50% violation rate and no reduction in the penalty amount.  *See Fernandez v. Victoria's Secret Stores, LLC*, No. CV 06-04149-MMM (SHx), 2008 WL 8150856, at *11-16 (C.D. Cal. 2008) (awarding 34% of the common fund where class counsel achieved a "generous" and "extremely favorable result for the class" despite facing "substantial risk litigating [the] case"); *Boyd v. Bank of America Corp.*, No. 8:13-0561-DOC (JPRx), at *14-18 (C.D. Cal. Nov. 18, 2014) (awarding one third of the common fund where the class counsel achieved a settlement equal to 36% of the full possible relief).

### i.  Cross-Check with Lodestar Calculations

Plaintiff's Counsel's requested lodestar rates are $850 (Schimmel—admitted 1981), $800 (Parks—admitted 1991), and $500 (Rhodes—admitted 2014) per hour. Here, Plaintiff's counsel's attorneys' fees through November 16, 2020 are $489,435.00, which are based on approximately 653 hours worked through November 16, 2020 at the attorneys' lodestar hourly rates. (Parks Decl., ¶¶ 24-38.) Plaintiff's counsel has not included in its lodestar calculations any of the additional time it has continued to work on this matter after November 16, 2020 and expects to continue to spend completing preparation of this motion, coordinating with opposing counsel related to the motion and approval, preparing for and appearing at the hearing for approval, working with the Settlement Administrator as needed, and resolving any post-approval issues that may arise, and it has excluded secretarial and administrative tasks as well.  (See Parks Decl., ¶31.)

Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award.

The lodestar calculation can be helpful in suggesting a higher percentage when, as here, litigation has been protracted. Thus, while the primary basis of the fee award remains the percentage method, the lodestar may provide a useful perspective on the reasonableness of a given percentage award. *Vizcaino*, 290 F.3d at 1050. "To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Camacho v. Bridgeport Fin., Inc*., 523 F.3d 973, 980 (9th Cir. 2008) (quoting *Blum v. Stenson*, 465 U.S. 886, 896 (1984)).

Here, in addition to Plaintiff's Counsel's own personal assurances that the hourly rates are reasonable, Plaintiff's Counsel has presented the declaration of David DeRubertis, a prominent employment litigation attorney in the state of California who practices in Los Angeles and has expertise and direct familiarity with and cited to cases where courts have awarded and substantiated Plaintiff's Counsel's hourly rates. DeRubertis Decl., ¶¶2-11.  Mr. DeRubertis has provided detailed testimony and a foundation for determination that Plaintiff's Counsel's proposed rates fall within the prevailing rates "in the community for similar services by lawyers of reasonably comparable skill." *Camacho, supra.*; DeRubertis Decl., ¶¶12-24.  Plaintiff's Counsel also provided detailed billing records regarding the number of hours spent on this case in further substantiation and support of the Court's cross-check concerning the reasonableness of the proposed fee award. Parks Decl. ¶¶28-36, Ex. "B".

Moreover, the lodestar amount may be increased by applying a multiplier. *See Serrano v. Priest*, 20 Cal. 3d 25, 49 (1977). In California, "[m]ultipliers can range from two to four or even higher" and are routinely applied in the range requested by class counsel. *Wershba v. Apple Computer, Inc*., 91 Cal. App. 4th 224, 254 (2001); *see also Chavez v. Netflix, Inc*., 162 Cal. App. 4th 43, 66 (2008)

(upholding 2.5 multiplier); *Glendora Community Redevelopment Agency v. Demeter*, 155 Cal. App. 3d 465 (1984) (affirming a fee award that included a 12.0 multiplier). Some of the factors a trial court considers when determining whether to apply a multiplier are: "(1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, (4) the contingent nature of the fee award." *See Ketchum v. Moses*, 24 Cal. 4th 1122, 1132 (2001) (citations omitted). The ultimate goal is "to entice competent counsel to undertake difficult public interest cases." *San Bernardino Valley Audubon Soc. v. County of San Bernardino*, 155 Cal. App. 3d 738, 755 (1985). Fee awards that are too small "chill the private enforcement essential to the vindication of many rights…." *Lealao v. Beneficial California, Inc*., 82 Cal. App. 4th 19, 53 (2000).

Application of a multiplier as high as 2.5 would be appropriate based on the contingent risk incurred by Plaintiff's counsel in this 5+ years of litigation, the results obtained in declining to apply Maryland Law to the enforcement of the representative action waiver in the arbitration agreement, the difficulty of the questions involved, the substantial benefit conferred on the LWDA and the aggrieved employees as a result of the settlement, and the skill displayed by Plaintiff's counsel.  DeRubertis Decl., ¶¶25-31; Parks Decl., ¶¶32-33, 38.  In light of the total hours and lodestar rates, Plaintiff's counsel's requested fee award would be cross checked at an approximate 2.0 multiplier of the lodestar fees. Plaintiff's counsel respectfully submits that an award of a 1/3rd of the recovery for $1,020,666.67 in attorneys' fees is reasonable under the circumstances of this case.

### d. Plaintiff's Reasonable Request for Reimbursement of Actual Litigation Costs

Plaintiff's counsel also requests reimbursement for their actual litigation costs. The settlement agreement provides for reimbursement of costs not to exceed $20,000.00. To date, Schimmel & Parks has incurred actual costs in the amount of

25

$11,314.71. (Parks Decl., ¶ 37; Exhibit "B".) These costs were reasonably incurred in prosecuting this case on behalf of the LWDA and the aggrieved employees and should be approved by the Court. Accordingly, Plaintiff's counsel respectfully requests the Court approve costs in the amount of $11,314.71. Plaintiff's counsel's efforts resulted in an excellent settlement, and therefore the fee and costs award should be approved as fair and reasonable. Defendant does not oppose the requested fees and costs to the Plaintiff's Counsel as a reasonable award.

### e.  Settlement Administration

The parties have agreed to use ILYM to administer the Settlement. Estimated costs will not exceed $22,550.00. (Parks Decl., ¶ 39.) This amount will include all costs of administering the settlement including but not limited to (i) preparing, issuing and mailing any and all notices to the aggrieved employees and the parties' respective counsel; (ii) communicating with the aggrieved employees and the parties' respective counsel; (iii) computing, processing, reviewing and making payments to the aggrieved employees; (iv) preparing any tax returns and other filings required by any governmental taxing authority or agency; and preparing and mailing any required notices under the Class Action Fairness Act.

## VI.  **CONCLUSION**

For all the foregoing reasons, this Court should grant this Motion for Approval of PAGA Settlement, adopt the [Proposed] Order Granting Motion for Approval of PAGA Settlement submitted herewith, and enter Judgment accordingly.

DATED: November 30, 2020          SCHIMMEL & PARKS
A Professional Law Corporation

*/s/Michael W. Parks*
Alan I. Schimmel, Esq.
Michael W. Parks, Esq.
Arya Rhodes, Esq.
*Attorneys* for Plaintiff