**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Lourdes Lefevre et al., <br><br> Plaintiffs, <br><br> v. <br><br> Five Star Quality Care, Inc. et al. <br><br> Defendant. | 5:15-cv-01305-VAP-SPx <br><br> **Order GRANTING Motion for Approval of PAGA Settlement IN PART (Dkts. 76, 77)** |

On November 30, 2020, Lourdes Lefevre ("Plaintiff") filed an unopposed Motion for Approval of PAGA Settlement ("Motion"). (Dkts. 76, 77). After considering all the papers filed in support of the Motion, the Court GRANTS the Motion IN PART.

### I. BACKGROUND

Plaintiff is a former employee of Defendant Five Star Quality Care, Inc. During her employment with Defendant, she worked as a personal care giver for patients at a senior living center, including those with terminal illnesses and debilitating conditions like Alzheimer's Disease and dementia. (Dkt. 76, at 2). On February 17, 2015, Plaintiff sent the California Labor and Workforce Development Agency ("LWDA") a notice that Defendant allegedly violated the Labor Code. (*Id.*) On May 20, 2015, she filed a class action complaint, alleging labor code violations for unpaid wages, unpaid meal and

rest period premiums, failure to timely pay final wages, non-compliant wage statements, and unreimbursed business expenses. (*Id.*)

Based on these violations, Plaintiff brought (i) a representative action under California's Private Attorneys General Act ("PAGA") and (ii) a class action on behalf of other employees of Defendant who allegedly experienced the same violations. (Dkt. 1-1, at ¶19).

On November 12, 2019, the Court granted Defendant's Motion to Compel Arbitration with regard to Plaintiff's non-PAGA claims and stayed the PAGA claims pending completion of the arbitration. (Dkt. 75). The parties now request that the Court approve the proposed settlement under section 2699(l) of the California Labor Code. (Dkt. 76).

## II. LEGAL STANDARD

The California legislature enacted PAGA "to allow aggrieved employees, acting as private attorneys general, to recover civil penalties for Labor Code violations, with the understanding that labor law enforcement agencies were to retain primacy over private enforcement efforts." *Arias v. Superior Court*, 46 Cal. 4th 969, 980 (2009); *Baumann v. Chase Inv. Servs. Corp.*, 747 F.3d 1117, 1121 (9th Cir. 2014) ("If the California Labor and Workforce Development Agency ('LWDA') declines to investigate an alleged labor law violation or issue a citation, an aggrieved employee may commence a PAGA action against an employer 'personally and on behalf of other current or former employees to recover civil penalties for Labor Code violations.'"). An "aggrieved employee" is defined as "any person who was

employed by the alleged violator and against whom one or more of the alleged violations was committed." Cal. Lab. Code § 2699(c).

"An employee plaintiff suing [under PAGA] does so as the proxy or agent of the state's labor law enforcement agencies." *Arias*, 46 Cal. 4th at 986. An action for civil penalties under PAGA "is fundamentally a law enforcement action designed to protect the public and not to benefit private parties." *Id.* (quoting *People v. Pacific Land Research Co.*, 20 Cal. 3d 10, 17 (1977)). "Because an aggrieved employee's action under [PAGA] functions as a substitute for an action brought by the government itself, a judgment in that action binds all those, including nonparty aggrieved employees, who would be bound by a judgment in an action brought by the government." *Id.* "Of the civil penalties recovered, 75 percent goes to the California Labor and Workforce Development Agency, leaving the remaining 25 percent for the 'aggrieved employees.'" *Ochoa-Hernandez v. Cjaders Foods, Inc.*, No. C 08-2073 MHP, 2010 WL 1340777, at *1 (N.D. Cal. Apr. 2, 2010) (quoting Cal. Labor Code § 2699(i)).

Further, section 2699(l)(2) states, "[t]he superior court shall review and approve any settlement of any civil action filed pursuant to this part. The proposed settlement shall be submitted to the agency at the same time that it is submitted to the court." Cal. Lab. Code § 2699(l)(2). "A court has discretion to approve the settlement of PAGA claims if the settlement would be 'fair.'" *Junhee Lee v. Esra Jung*, No. 15-cv-01529-HRL, 2016 U.S. Dist. LEXIS 136162, at *2 (N.D. Cal. Sep. 29, 2016). "The court may consider factors such as the merits of the action, the maximum recovery the plaintiff

could obtain if the merits were decided in his favor, and 'how and why [the] parties arrived at the settlement amount.'" *Hollis v. Weatherford US LP*, No. 1:16-CV-00252-JLT, 2017 WL 131994, at *2 (E.D. Cal. Jan. 12, 2017).

The LWDA has suggested some guidelines for approving PAGA claims, which have been cited with approval by a number of courts:

> when a PAGA claim is settled, the relief provided for under the PAGA [should] be genuine and meaningful, consistent with the underlying purpose of the statute to benefit the public and, in the context of a class action, the court [should] evaluate whether the settlement meets the standards of being fundamentally fair, reasonable, and adequate with reference to the public policies underlying the PAGA.

*Syed v. M-I, L.L.C.*, No. 112CV01718DADMJS, 2017 WL 714367, at *13 (E.D. Cal. Feb. 22, 2017) (internal quotations and citations omitted); *O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1133 (N.D. Cal. 2016). In doing so, the Court may "consider factors such as the merits of the action, the maximum recovery the plaintiff could obtain if the merits were decided in his favor, and 'how and why [the] parties arrived at the settlement amount.'" *Hollis*, 2017 WL 131994 at *2.

As other courts in this district have found, however, "the Act is surprisingly short on specifics," and neither the California legislature, the LWDA, nor California courts have identified "the appropriate standard for approval of such a settlement." *Flores v. Starwood Hotels & Resorts Worldwide, Inc.*, 253 F. Supp. 3d 1074, 1075 (C.D. Cal. 2017). As a result, "[f]ederal district courts, sitting in diversity, have often been left to their own

4

devices in this area of great importance to the citizens of California." *Id.* at 1075-76.

## III.  DISCUSSION

Plaintiff brought this PAGA action in a representative capacity. The parties propose an aggregate settlement amount of $3,062,000.00, divided as follows:

- $1,505,601.46 to the LWDA;
- $501,867.16 to the Aggrieved Employees;
- $22,550.00 in administration costs;
- $1,020,666.67 in attorneys' fees; and
- $11,314.71 in litigation costs and expenses.

**A.  PAGA Settlement**

As discussed above, the Court adopts the "fair and reasonable" standard other courts have applied to review PAGA settlements. "A court has discretion to approve the settlement of PAGA claims if the settlement would be 'fair.'" *See Junhee Lee v. Esra Jung*, 2016 U.S. Dist. LEXIS 136162 at *2 (citing *Nordstrom Commission Cases*, 186 Cal. App. 4th 576, 581 (2010)). The court may consider factors such as the merits of the action, the maximum recovery the plaintiff could obtain if the merits were decided in his favor, and "how and why [the] parties arrived at the settlement amount.'" *Hollis*, 2017 WL 131994 at *2 (citing *Junhee Lee v. Esra Jung*, 2016 U.S. Dist. LEXIS 136162 at *4-5).

5

In the traditional PAGA settlement context, courts must review "the merits of the action [and] the maximum recovery the plaintiff could obtain" to ensure the LWDA and other potentially aggrieved employees, who are bound by the settlement, are not being short-changed. The Court finds the proposed settlement amount to be reasonable. The proposed settlement amount, $3,062,000.00, represents 17% of the maximum possible settlement value. (*See* Dkt. 76, at 15 ("Plaintiff could have obtained a maximum of $18 million in PAGA penalties assuming a 100% violation rate. Thus, Plaintiff's $3M settlement translates to almost 17% of the soaking wet total verdict value.")). Other courts considering similar factual circumstances have approved similar settlements. *See, e.g.*, *Rodriguez v. West Publ'g Corp.*, 2007 WL 2827379, at *9 (C.D. Cal. Sept. 10, 2007) (approving settlement awarding 30% of maximum damages).

The Court also finds the settlement is fair, reasonable, and adequate when considering "how and why [the] parties arrived at the settlement amount." *Hollis*, 2017 WL 131994 at *2. Here, the parties exchanged significant amounts of information in advance of the mediation. Indeed, Defendant provided Plaintiff: "(1) Plaintiff's wage statements, personnel file, and payroll records; (2) Defendant's handbooks in effect during the relevant limitations periods; (3) forms used by Defendant and its employees relevant to Plaintiff's claims; (4) a sampling of employee schedules, (5) over five years' worth of timekeeping data consisting of over 300,000 work weeks and approximately 180,000 pay periods for approximately 5,000 of Defendant's employees; (6) over five years' worth of payroll data for the same group of

employees; (7) additional statistics for the group of aggrieved employee." (Dkt. 76, at 9).

Plaintiff reviewed this information and evaluated "potential PAGA penalties that could be recovered, and the likelihood of recovering the same based on Defendant's defenses to liability and the ability of the Court to award reduced penalties before entering mediation." (Dkt. 76, at 10). Furthermore, there is no evidence of collusion; the settlement was reached as a result of arm's length negotiation before an experienced mediator, with each side represented by counsel experienced in PAGA and wage and hour matters. (Dkt. 76, at 3). *See Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 WL 1230826, at *6 (N.D. Cal. Apr. 1, 2011), *supplemented*, No. C-06-05778 JCS, 2011 WL 1838562 (N.D. Cal. May 13, 2011) ("An initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining." (internal quotations and citation omitted)).

In sum, the Court finds the settlement is "consistent with the underlying purpose of the statute to [1] benefit the public," *Syed*, 2017 WL 714367 at *13; (2) "protect the public"; and (3) not "benefit private parties," *Arias*, 46 Cal. 4th at 986. Further, the Court finds the PAGA settlement amount is "fundamentally fair, reasonable, and adequate." *Syed*, 2017 WL 714367 at *13.

7

**B.     Attorneys' Fees**

When evaluating attorneys' fees, the Ninth Circuit has held that "the district court has discretion in common fund cases to choose either the percentage-of-the-fund or the lodestar method." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (citing *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1295–96 (9th Cir. 1994)). When using the percentage-of-the-fund method, "courts typically set a benchmark of 25% of the fund as a reasonable fee award, and justify any increase or decrease from this amount based on circumstances in the record." *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 455 (E.D. Cal. 2013); *see Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989). The percentage may be adjusted upward or downward based on (1) the results achieved; (2) the risks of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee; (5) the burdens carried by counsel; and (6) the awards made in similar cases. *Monterrubio*, 291 F.R.D. at 455 (citing *Vizcaino*, 290 F.3d at 1048–50).

Here, Plaintiffs' Counsel seeks 33% of the total settlement fund, which is significantly higher than the Ninth Circuit's 25% "benchmark award" for attorneys' fees. *Hanlon*, 150 F.3d at 1029. Thus, before approving the proposed fee, the Court must evaluate it under the factors set forth in *Vizcaino*.

1.     Results Achieved

Plaintiffs' Counsel have provided no evidence that it obtained an especially exemplary result. Here, the settlement amount obtained by

Plaintiffs' Counsel represents 17% of the maximum possible value, which is less than the settlement percentages in many of the cases Counsel cites to support its request for higher fees. *See Clayton v. Knight Transp.*, No. 1:11-CV-00735-SAB, 2013 WL 5877213, at *7 (E.D. Cal. Oct. 30, 2013) (denying a request for one third of the common fund and awarding the benchmark where, among other things, the results achieved were "good" but not "exceptional" because class members were "anticipated to recover less than 50% of their potential recovery"). Accordingly, this factor weighs against approving the proposed attorneys' fees award.

### 2. Risks of Litigation

Although Plaintiffs' Counsel did assume some degree of risk by representing Plaintiffs, Plaintiffs' Counsel have not shown that this case carries the type of extreme risk that would merit a significant departure from the 25% benchmark. Compare *Monterrubio*, 291 F.R.D. at 456–57 (finding case was not "extremely risky" although it was questionable whether the class could be certified, whether the plaintiff could prove an employer's policies violated labor code sections on a "knew or should have known" standard, and whether plaintiff could overcome an "exhaustion defense"), and *Hawthorne v. Umpqua Bank*, No. 11-CV-06700-JST, 2015 WL 1927342, at *5 (N.D. Cal. Apr. 28, 2015) (holding the risk in a case did not merit an attorneys' fee award of 33% even though the class counsel "expended a significant amount of time and effort litigating this case over the past three years and undertook a major risk by taking it on a contingency basis."), with *Vizcaino*, 290 F.3d at 1048 (finding case "extremely risky" when, among

other factors, plaintiffs lost twice in district court and there was absence of supporting precedent).

Notably, the only case Plaintiffs' Counsel relies on, *Vizcaino*, is largely distinguishable. In that case, the plaintiffs' counsel requested a 3% increase in the Ninth Circuit benchmark on attorneys' fees from 25% to 28% after litigating the case for 11 years. *Vizcaino*, 142 F. Supp. 2d at 1304. The court found that counsel took on several risks with litigating the action, including: (1) the class members signed agreements with Microsoft waiving their rights to employee benefits; (2) there was no controlling law on the benefits waiver issue; (3) the class suffered multiple losses in the district court which resulted in multiple appeals before the Ninth Circuit, and; (4) Microsoft is one of the nation's most formidable companies, and Plaintiffs' Counsel worked with several law firms on the matter for several years which complicated their work. (*Id.*) Here, Plaintiffs' Counsel requests an even greater award than the award granted in *Vizcaino* (33%) after litigating this case for five years and defending one appeal before the Ninth Circuit. Moreover, while the Court recognizes the challenges of litigating a case during the COVID-19 pandemic, Plaintiffs' Counsel fails to describe any specific challenges that were faced with settling this case as a result of the pandemic. (Dkt. 76, at 19). Nevertheless, as the parties note, this case presented some complex and novel issues concerning the choice of law provision. Accordingly, this factor weighs slightly in favor of an upward deviation from the benchmark.

### 3. Skill and Quality of the Work

While the Court does not doubt Plaintiffs' Counsel are experienced and skilled litigators, they have not shown the kind of exceptional skill or quality of work to warrant a departure from the 25% benchmark. Thus, this factor weighs against approving the proposed attorneys' fees award.

### 4. Contingent Nature of the Fee and Burdens Carried

"It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases." *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d at 1299. Thus, whether Plaintiffs' Counsel have taken the case on a contingency fee basis must be considered when deciding to vary from the 25% benchmark. *Monterrubio*, 291 F.R.D. at 457. Here, Plaintiffs' Counsel took this case on a contingency fee basis. Thus, this factor weighs slightly in favor of an upward deviation from the benchmark.

### 5. Awards Made in Similar Cases

As noted above, 25% is the Ninth Circuit's "benchmark award for attorney[s'] fees." *Hanlon*, 150 F.3d at 1029. Plaintiffs' Counsel request the Court enhance the award, citing to cases in which courts have awarded attorneys' fees at or above one third of the total settlement fund. (*See* 76, at 22-23). Plaintiffs' Counsel, nevertheless, have failed to show how any of those cases are similar to this one. *See Regino Primitivo Gomez, et al. v. H&R Gunlund Ranches, Inc.*, No. CV F 10–1163 LJO MJS, 2011 WL 5884224 (E.D. Cal. 2011) (approving attorneys' fees award equal to 45% of

1 the settlement fund but which also included costs of administration as
2 plaintiffs' counsel also acted as claims administrator).  In fact, in cases
3 where class members recovered a similarly low percentage award, the
4 Court has found the result achieved does not justify a departure from the
5 benchmark.  *Hillman v. Lexicon Consulting, Inc.*, No. EDCV 16-01186-VAP-
6 SPx, 2017 WL 10434013, at *6 (C.D. Cal. Oct. 12, 2017). Therefore, this
7 factor weighs against a departure from the 25% benchmark.

### 6. Burdens Carried by Plaintiffs' Counsel

Plaintiffs' Counsel have provided information as to the costs in prosecuting this action, which, combined, account for $11,202.91 of the total $1,020,656.46 requested.  (Dkt. 76-1, ¶ 37-38).  The Court finds these expenses reasonable, but not overly burdensome.  This factor also weighs against the proposed fee enhancement.

### 7. Lodestar Cross-Check

Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award.  Where such investment is minimal, as in the case of an early settlement, the lodestar calculation may convince a court that a lower percentage is reasonable.  Similarly, the lodestar calculation can be helpful in suggesting a higher percentage when litigation has been protracted.  Thus, while the primary basis of the fee award remains the percentage method, the lodestar may provide a useful perspective on the reasonableness of a given percentage award. *Vizcaino*, 290 F.3d at 1050.

"To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008) (quoting *Blum v. Stenson*, 465 U.S. 886, 896 (1984)). Here, Plaintiffs' Counsel report that its lodestar is $490,640.00, based on a total of approximately 653.7 hours at hourly rates of $500, $800, and $850 for each attorney on the matter and $150.00-$475.00/hour for the 15 hours spent by law clerks. (Dkt. 76-1, ¶ 35).

After a review of Plaintiffs' Counsel's declarations, the Court concludes that the lodestar amount is reasonable considering the work performed and the prevailing rates in the community for attorneys of comparable skill, experience and reputation. Counsel provided supporting evidence as to the prevailing rates in the community for similar services by lawyers of reasonably comparable skill. (*Id.*, Ex. A-B). Further, Counsel have provided detail regarding the number of hours it spent on this case.

Moreover, the fee Counsel seeks reflects a multiplier of 2.5 on the lodestar which is reasonable for a complex class action case. *See Hopkins v. Stryker Sales Corp.*, 11CV2786-LHK, 2013 WL 496358, at *4 (N.D. Cal. Feb. 6, 2013) ("Multipliers of 1 to 4 are commonly found to be appropriate in complex class action cases."). In the recent $50 million settlement in *Spann*, Judge Olguin held that a multiplier of 3.07 was "well within the range

of reasonable multipliers." *Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244, 1265 (C.D. Cal. 2016); *see also Vizcaino*, 290 F.3d at 1052–1054 (surveying multipliers in 23 class action suits and recognizing that courts applied multipliers of 1.0 to 4.0 in 83% of surveyed cases); *Parkinson v. Hyundai Motor Am.*, 796 F. Supp. 2d 1160, 1170 (C.D. Cal. 2010) (observing that "multipliers may range from 1.2 to 4 or even higher").

In sum, four of the *Vizcaino* factors weigh against departing from the 25% attorneys' fee award benchmark and two factors weigh in favor. In addition, Plaintiffs' Counsel's lodestar calculation figures are reasonable. The Court therefore finds that the facts of this case support a departure from the benchmark by 2% from 25% to 27%.

Accordingly, the Court DENIES Plaintiffs' Counsel's application for attorneys' fees equal to 33% of the settlement fund ($1,020,666.67). Instead, the Court APPROVES an attorneys' fees award of 27% of the settlement fund ($826,740.00), with the remainder of the settlement allotted to attorneys' fees evenly divided between the LWDA and Aggrieved Employees.

## IV. CONCLUSION

For the reasons stated above, the Court GRANTS the Motion IN PART. The Court APPROVES the proposed aggregate settlement amount of $3,062,000.00. The Court DENIES the Motion as to the proposed award of attorneys' fees.

The Court APPROVES the settlement as follows:

- $1,602,564.79 to the LWDA;
- $598,830.50 to the Aggrieved Employees;
- $22,550.00 in administration costs;
- $826,740.00 in attorneys' fees; and,
- $11,314.71 in litigation costs and expenses.

**IT IS SO ORDERED.**

Dated: 1/7/21

Virginia A. Phillips
United States District Judge